UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| PATRICK LEWIS, #156554, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:12-cv-1109 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| WILLIE SMITH, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION

This is a habeas corpus proceeding brought *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner's convictions stem from his role in the February 16, 2001, killing of David Franklin. A Kent County Circuit Court jury found petitioner guilty of second-degree murder, Mich. Comp. Laws § 750.317, carrying a concealed weapon, Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner was sentenced to 35 to 55 years' imprisonment for his murder conviction, three to five years' imprisonment for his carrying a concealed weapon conviction, and a consecutive two years' imprisonment for his felony-firearm conviction.

After unsuccessful attempts to overturn his conviction in state court, petitioner filed this habeas corpus petition. Petitioner seeks federal habeas corpus relief on the following grounds:

I.     The trial court lost jurisdiction to try petitioner when it deprived him of an arraignment in violation of this rights under the Fourteenth Amendment's Due Process Clause.

II.    Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel where the trial court erroneously ordered the withdrawal of court appointed counsel based on supposed conflict of representation.

III.   Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated when the trial court denied petitioner's *pro se* motion asking the judge to disqualify himself and assign the matter to another judge.

IV.    The trial court abused its discretion by denying petitioner access to requested discovery material, an independent expert witness, and the right to be present at every stage of trial proceedings in violation of petitioner's Fifth, Sixth, and Fourteenth Amendment rights.

V.     Prosecutorial misconduct in offering into evidence a poor quality recording of a conversation between petitioner and Angela Cross and using his own version of the recording in questions to witnesses and reading it to the jury.  The trial court abused its discretion in allowing the prosecutor to read his version to the jury.

VI.    Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel where counsel conducted no investigation, interviewed no witnesses, subpoenaed no witnesses, failed to lodge necessary objections, failed to communicate with petitioner, failed to communicate with the investigator, and failed to contact the independent expert regarding the tape.

VII.   Petitioner was deprived of his Sixth Amendment right to the effective assistance of appellate counsel where counsel failed to raise on direct appeal the issues that petitioner subsequently raised in his motion for post-conviction relief under Mich. Ct. R. 6.500.

VIII.  The trial court violated petitioner's right to a speedy trial where it allowed seven or eight months to pass before bringing petitioner back to Kent County.  The court allowed a total of eleven months to pass from the date of the Supreme Court's reversal to the date of the retrial.  Petitioner was prejudiced by the delay.

-2-

(Amended Petition, ECF No. 5, PageID.152-64, 170-78).[1]

Respondent has filed an answer to the amended petition. (Answer, ECF No. 11). Respondent argues that Grounds I through V are barred by procedural defaults and that petitioner has not established grounds to excuse those defaults. (*Id.* at 8, 38-61 PageID.380, 410-33). He argues that grounds VI through VIII should be denied for lack of merit. (*Id.* at 62-73, PageID.434-45).

Judge Bell has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief. I recommend that the petition be denied on the merits.[2]

## **Standard of Review**

---

[1]Petitioner's invocation of Michigan's constitution and laws as grounds for federal habeas corpus relief are ignored herein because federal habeas corpus relief is available "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

[2]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (per curiam).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that

habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White*

*v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

### A.    District Court Proceedings

Petitioner received a preliminary examination in 61st District Court. (Preliminary Examination (PE), ECF No. 14, 15).  On March 8, 2001, Judge Patrick Bowler bound over petitioner for trial in Kent County Circuit Court on the charges of open murder,[3] carrying a concealed weapon, felony firearm, and felony murder.[4]  (PE, 309).

### B.    Initial Trial in Circuit Court and Related Appeals

1.  <u>Circuit Court Proceedings</u>

Petitioner waived arraignment in Kent County Circuit Court.  (PE, 309, ECF No. 15; ECF No. 2-2, PageID.121; ECF No. 13).

Petitioner was initially tried in late March and early April 2002.  (*see* ECF No. 13; *see also* ECF No. 2-2, PageID.123).  Judge Buth read the charges against petitioner in the information before the jury heard the attorneys' opening statements or evidence from any witness:

> The information in this case charges the defendant, Patrick Lewis, with the crimes of, in Count One, open murder, and in Count Two carrying a concealed weapon on his person, in Count Three, felony firearm, and count Four, felony murder.  And it reads as follows:

---

[3]Under Michigan law, the charge of open murder allows a defendant to be convicted of first-degree or second-degree murder or manslaughter, depending on the proofs.  MICH. COMP. LAWS § 767.71; *see People v. Johnson*, 398 N.W.2d 219, 222-23 (Mich. 1986); *see also Williams v. Jones*, 231 F. Supp. 2d 586, 589 (E.D. Mich. 2002).

[4]On December 13, 2001, petitioner received a supplemental hearing in 61st District Court when the prosecution added a second felony firearm charge.  (ECF No. 16).  Judge Bowler incorporated his earlier ruling by reference and bound over petitioner for trial on the additional charge.  This second felony firearm charge was apparently dropped before petitioner's trial began.

That on or about February 16 of the year 2001, at 435 Eastern, Southeast, City of Grand Rapids, that in Count One, that Patrick Lewis did murder David Franklin contrary to Michigan law.

And in Count Two, that Patrick Lewis did carry a dangerous weapon, to-wit: A handgun, concealed on or about his person, again, contrary to Michigan law.

Count Three, that Patrick Lewis did carry or have possession of a firearm, to-wit: A handgun, at the time he committed or attempted to commit a felony, to-wit: Open murder, again, contrary to Michigan law.

And finally, in Count Four, that Patrick Lewis did, while in perpetration or attempted perpetration of a robbery, murder one David Franklin, again, contrary to Michigan law.

(ECF No. 18 at 8).

The jury heard evidence from a number of witnesses, including petitioner. (ECF No. 24, 25). On April 5, 2002, Judge Buth delivered his jury instructions. The instructions included the lesser charge of second-degree murder. (ECF No. 26 at 909-11). On April 5, 2002, a jury found petitioner guilty of second-degree murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony. (ECF No. 26 at 924-27). He was sentenced on August 21, 2002. (ECF No. 28 at 11-12).

    2.   <u>Appeals</u>

Petitioner pursued his appellate remedies. His appointed appellate counsel filed a motion for a new trial. On September 26, 2003, Judge Buth conducted a hearing on the motion. (ECF No. 30). The judge heard testimony from two witnesses: petitioner (*Id.* at 67-92) and Tonya Krause-Phelan, petitioner's appointed trial attorney (*Id.* at 4-65). Judge Buth found that Ms. Krause-Phelan did "an excellent job" representing petitioner. He rejected petitioner's claims of ineffective assistance of counsel. He

observed that the evidence presented at trial would have supported a jury verdict finding petitioner guilty of first-degree murder. The strength of Ms. Krause-Phelan's advocacy helped petitioner avoid a first-degree murder conviction. Judge Buth denied petitioner's motion for a new trial. (*Id.* at 100).

The Michigan Court of Appeals summarized the events giving rise to petitioner's criminal convictions as follows:

> Defendant's convictions arise out of the shooting death of the victim, a drug dealer. Defendant made a purchase of crack cocaine from the victim. After selling a portion of the cocaine, defendant alleged that he was not given the appropriate quantity. The victim refused to make any accommodations or give a refund in light of defendant's admission that he sold a portion of the cocaine. Eyewitness testimony established that defendant was angry with the victim, returned with a gun and a mask, and killed the victim. [Angela Cross, d]efendant's heroin supplier, initially denied any knowledge of defendant's involvement in the murder, but acknowledged that she discarded a "package" consisting of a gun and a white rubbery item after being confronted with an audiotape conversation between herself and defendant. Defendant testified that he did not commit the murder. Although charged with felony-murder, defendant was convicted of second-degree murder.

(8/31/04 Opinion, ECF No. 49). The Michigan Court of Appeals rejected the arguments that petitioner raised on appeal and affirmed his convictions. (*Id.*).

Petitioner sought leave to appeal to Michigan's highest court. On February 3, 2006, "[i]n lieu of granting leave to appeal," the Michigan Supreme Court reversed the judgment of the Court of Appeals and remanded the matter "to the Kent County Circuit Court for a new trial." (2/3/06 Order, ECF No. 48). The Michigan Supreme Court found that petitioner "had been prejudiced by the erroneous admission of a poor quality tape recording of a conversation to which he was a party. The jurors were

allowed to use a transcript of the recording that had been prepared by the police but not reviewed for accuracy by the trial court and not made part of the record." (*Id.*).

## C.   Circuit Court Proceedings Following Remand

### 1.   Pre-trial Proceedings

On April 26, 2006, Judge Buth appointed Attorney Larry Woods to represent petitioner. (ECF No. 13). On the same date, he scheduled petitioner's trial to begin on June 26, 2006. (*Id.*). That trial date was adjourned because petitioner was still being held in a prison facility rather than the Kent County Jail. (ECF No. 13). On September 27, 2006, Judge Buth set an October 30, 2006, trial date. (ECF No. 32 at 6; *see also* ECF No. 13). On October 13, 2006, Judge Buth denied petitioner's motions to dismiss and to set bond. (ECF No. 33).

On October 23, 2006, Attorney Woods filed a motion to withdraw because he had a direct conflict of interest. Mr. Woods had represented Angela Cross, a primary witnesses against petitioner. Mr. Woods and the assistant prosecutor expressed agreement that the direct conflict could not be waived. (ECF No. 34). The judge agreed. (ECF No. 35 at 3-4). Judge Buth granted Attorney Woods's motion to withdraw and he appointed Attorney Frederick Johnson to represent petitioner. (ECF No. 13).

On October 30, 2006, Mr. Johnson requested an adjournment to review the voluminous materials. Petitioner stated on the record that he agreed with the request for an adjournment. (ECF No. 35). Judge Buth granted the motion and he scheduled petitioner's trial to begin on January 8, 2007. (ECF No. 13, 35).

2.   Trial

Petitioner's trial began on January 8, 2007, and it concluded with the jury's verdict on January 19, 2007, finding him guilty of second-degree murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony. (ECF No. 36-43, TT I- TT VIII).

a.   Petitioner's Motions

On the morning his trial was set to begin, petitioner asserted that he was not ready to go to trial, claiming that he had not "had time to prepare." (TT I, 4, ECF No. 36). Attorney Johnson described his extensive trial preparation. He explained why, as an officer of the court, he had declined to file the various *pro se* motions that petitioner had drafted. (TT I, 4-6). The court rejected petitioner's request to adjourn because petitioner had plenty of time to prepare for trial.[5] (TT I, 5-6).

Petitioner asked the court to consider his *pro se* motions before the start of his trial. Judge Buth accommodated petitioner and considered all his eleventh-hour motions. The court went into recess for approximately one hour to read all petitioner's motions. (TT I, 11). Thereafter, the judge addressed all petitioner's motions on the record. Judge Buth denied petitioner's motion to disqualify him because there was no evidence of bias or prejudice. (TT I, 12, 17).

-------

[5]Petitioner was plainly aware of the charges he faced. Judge Buth noted on the record that the Michigan Supreme Court had ordered that petitioner be retried on charges of "second-degree murder, felony firearm, and carrying a concealed weapon." (TT I, 6, 14). The transcript shows that before jury selection began, the judge read the information listing the charges against petitioner. (TT I, 19-20).

Judge Buth denied petitioner's motion to quash the information.  (TT I, 17).
Petitioner argued that the prosecutor had committed misconduct in his earlier trial
and that witnesses "didn't really give testimony that was truthful[.]"  (TT I, 13-14).
Judge Buth observed that the issues of credibility would be determined during the
trial.  Further, it was clear to the court that the matter should go to trial.  There was
certainly probable cause to bind over petitioner for trial.  He had been convicted by a
jury and the matter had been thoroughly reviewed by Michigan's appellate courts.  The
appellate courts did not have any complaint about the prosecutor's conduct or the
sufficiency of the evidence.  The Supreme Court had made a ruling on a narrow issue
and ordered that petitioner be retried on charges of second-degree murder, carrying a
concealed weapon, and felony firearm.  (TT I, 14).

Petitioner's third motion was labeled as a "Notification of Request."  (TT I, 15).
In this motion, petitioner complained about the availability of witnesses.  None of the
individuals on the prosecution's witness list came as a surprise to petitioner, however.
It was essentially the same list from petitioner's original trial, less one detective from
the Michigan State Police.  (TT I, 9).  Petitioner's counsel had reviewed with petitioner
the testimony of every witness that had given testimony at petitioner's preliminary
examination and earlier trial.  (TT I, 10).  It was undisputed that one of the witnesses
petitioner wanted to call was dead.  (TT VIII, 94, ECF No. 42).  Petitioner conceded
that he would not have difficulty producing his brother, Richard Lewis, as a witness.
Cammie Blakely and Pat Johnson were transients and they could not be located.
There was no evidence indicating that their testimony would have been favorable to

petitioner.  (TT I, 7-8).  Judge Buth denied petitioner's motion.  (TT I, 17).  Before the trial began, the judge asked petitioner's attorney if there was anything that he had not been provided, or any discovery, information on evidence or witnesses that he needed. Petitioner's counsel responded:  "No, your Honor.  The fact of the matter is, this is a five-year-old case.  It's involved witnesses and individuals who are transient by nature and character.  I feel that what I have is what's available, and I'm satisfied and prepared to go forward."  (TT I, 16).

b.      Circuit Court Proceedings

The remainder of the first day of petitioner's trial was devoted to jury selection. (TT I, 17-150).  On the following morning, the judge delivered his preliminary instructions and the attorneys gave their opening statements.  (TT II, 8-64, ECF No. 37).  The theory of the defense was misidentification:  "We feel that by the time your finished with all the evidence, you won't have a gun, you won't have a mask, and you won't have anyone who you believe saw my client with those things."  (TT II, 63).

Petitioner's jury was presented with evidence that in the early morning hours of February 16, 2001, police responded to 911 calls regarding shots being fired at 435 Eastern in Grand Rapids, Michigan.  The door of the residence was standing open. (TT II, 65-66).  The victim, David Franklin was lying face down in the doorway.  He had suffered multiple gunshot wounds.  (TT II, 65-66, 72, 85, 102).  One shot went through his abdomen.  The other shot was in the right shoulder, and the bullet lodged in Franklin's lung.  (TT III, 11-19).  Police administered CPR and called for medical

assistance.  (TT II, 66, 75).  David Franklin was transported to St. Mary's Hospital where, at 1:35 a.m., he was pronounced dead.  (TT II, 113-14; TT III, 11).

The autopsy revealed that the gunshot wound to Franklin's right shoulder had been the cause of his death.  (TT III, 22-23, 25).  Two nine millimeter casings were found just inside the door of 435 Eastern.  Both casings had been fired by the same firearm.  One of the bullets was recovered during Mr. Franklin's autopsy.  A second bullet lodged in a love seat was recovered.  (TT III, 51-60).  Both bullets had been fired from the same 9 millimeter handgun.  (TT II, 159-60).

Police retrieved a Colt .32 caliber semi-automatic handgun off the victim's body.  (TT II, 68, 120-25, 184, 197).  Mr. Franklin also had $621 in cash in the right front pocket of his pants.  (TT II, 20).

When the police arrived at Franklin's residence at 435 Eastern, in addition to finding the victim's body, they encountered two other individuals:  Christopher Cain and Mary Hughes.  Ms. Hughes had hidden in a kitchen closet after hearing the gunshots.  (TT II, 67-68, 72, 76, 105; TT IV, 237-38, ECF No. 39).

Christopher Cain testified that he had been at 435 Eastern on the night David Franklin was killed.[6]  He knew that Franklin was operating a drug business.  (TT V, 8-13, ECF No. 40).  Cain testified that when petitioner arrived at 435 Eastern that

---

[6]Mr. Cain's testimony was from petitioner's preliminary examination hearing. (PE at 252-94, ECF No. 15).  The testimony from Alfred Parnell, David Reiner, and Brenda Kilgore came from petitioner's first trial.  (ECF No. 19 at 300-14; ECF No. 20 at 448-66; ECF No. 23 at 522-89).  Before any such testimony was read into the record at petitioner's second trial, the court conducted a due diligence hearing and found that none of these witnesses were available at the time of trial, and that they had all given testimony under oath and were subject to cross-examination.  (TT IV, 125-40).

night he had been wearing a black leather coat and a black leather hat.  Petitioner then accompanied Mr. Franklin to a back room.  Petitioner was complaining about being shorted.  When petitioner he left, he was very angry.  (TT V, 14-17, 22, 35).  Cain testified that later he saw Mr. Franklin accompany someone in a colored shirt to the front door.  Cain saw flashes of fire and heard two gunshots ring out while Franklin was at the front entrance.  Cain's initial response was to run out the back door.  He ran a few blocks away and called 911.  He walked back to 435 Eastern and told the police about what he had witnessed.  (TT V, 24-27, 38).

Susan Tramlee testified that on the night Mr. Franklin was shot, she was living in a downstairs apartment at 437 Eastern with Sam Binion.  (TT IV, 37).  Dwight Mapp lived in an upstairs apartment at 437 Eastern.  Ms. Tramlee testified that in 2001 she was using drugs.  She purchased crack cocaine from Dave Franklin.  Franklin used the building next door at 435 Eastern as his base for selling drugs.  (TT IV, 42-45, 51).  Ms. Tramlee also knew petitioner.  (TT IV, 47).  Ms. Tramlee testified that petitioner bought and sold crack cocaine.  Petitioner needed more crack to sell.  On the night of the shooting, Sam Binion took petitioner next door to meet Dave Franklin.  Petitioner was wearing a black leather jacket and cap.  Petitioner apparently made a drug transaction with Mr. Franklin.  (TT IV, 63-67).  Later, when petitioner returned to the apartment that Ms. Tramlee and Mr. Binion shared, he was upset.  He met briefly with Mr. Binion and indicated that whatever was wrong was Ms. Tramlee's fault.  Petitioner left the apartment at 437 Eastern, and about thirty minutes later, the two shots were fired next door.  (TT IV, 68-71).  Mr. Binion came back inside the

apartment and indicated that petitioner shot Dave Franklin.  (TT IV, 73-74).  Alfred Parnell a/k/a "Meechie" made a similar exclamation indicating to Ms. Tramlee that petitioner shot Mr. Franklin.  (TT IV, 49, 73-74).

Ms. Tramlee was taken to the police station where she gave a statement to Detective Fannon.  Police gave her a ride back home.  She was shocked when she entered the apartment at 437 Eastern and found petitioner in her bedroom.  The police were in the livingroom.  She was able to tip off the police that petitioner was in the bedroom.  Police "shooed all the civilians out of the apartment" and then they arrested petitioner without further incident.  Petitioner had changed his clothes.  He was no longer wearing the black leather jacket and black leather cap.  (TT IV, 78-80, 119).

Detective James Fannon testified that petitioner had denied being at 435 or 437 Eastern on the night of the murder, despite the fact that petitioner had been arrested at 437 Eastern.  (TT V, 183).

Mr. Binion gave testimony that generally supported Ms. Tramlee's version of events.  Among other things, Mr. Binion testified that he knew petitioner.  That Mr. Franklin sold crack to petitioner on the date in question.  Petitioner thought that Franklin had shorted him on the amount of crack that he had purchased.  Petitioner became very upset when Franklin told him that there was nothing he could do because petitioner had smoked some of the crack and it was no longer in the same wrapper. (TT IV, 146, 161-64, 198).  Petitioner and Binion returned to the Tramlee/Binion apartment.  While Binion and petitioner were smoking some crack, Binion saw petitioner's "Scream" mask.  He described it as a long mask with dark eyes and a long

-16-

chin and it was in a pocket of petitioner's jacket.  (TT IV, 166).  When petitioner and Binion went back outside, petitioner showed Binion his semi-automatic handgun. Petitioner racked a round into the chamber.  (TT IV, 169-71, 202).  Binion testified that he went back into the  apartment to get Meechie, and when he and Meechie came back outside, petitioner was gone.  Binion and Meechie went next door to buy crack from Mr. Franklin.  Meechie went inside and Binion waited outside.  Binion saw petitioner dressed in black and wearing the scream mask.  He heard the door to Franklin's apartment open, followed shortly thereafter by two gunshots.  Binion and Meechie ran back to the Binion/Tramlee apartment and told Ms. Tramlee that petitioner shot Dave Franklin.  (TT IV, 171-77, 206).

Dwight Mapp and his wife Johnnie Coleman both testified that on the date in question, they were living in a main floor apartment at 437 Eastern.  Sam Binion and Susan Tramlee were neighbors that lived in a downstairs apartment.  The victim, David Franklin, stayed at an adjoining apartment at 435 Eastern.  (TT V, 132-35, 172-73).  On the night that the shooting occurred, Mr. Mapp came out onto his porch and he saw someone crouching down near 435 Eastern and that person was wearing a "Scream" mask.  Mapp testified that he had "no doubt" that petitioner was the person wearing the mask.  Mapp saw something in petitioner's hand that looked like a gun. Mapp went back inside his apartment, then he heard two gunshots.  He had his wife call 911 and waited for the police to arrive.  Mapp testified that immediately after the shooting he was concerned for the safety of his family, and he initially told the police that he did not see anything.  Later that day, he advised police that petitioner was the

man that he had seen outside the victim's apartment immediately before the shooting occurred.  (TT V, 141-68).

Detective Fannon testified that Angela Cross had initially been very hostile to the police and denied having any knowledge regarding the killing of David Franklin. Subsequently, Detective Fannon discovered that there was a March 31, 2001, recorded telephone conversation between Ms. Cross, petitioner, and an unknown third party. When police confronted Ms. Cross with the recording, she became more cooperative. She indicated that she had disposed of a package for petitioner.  The recorded telephone conversation was played for the jury.  (TT V, 185-95).

Angela Cross testified that she was a close friend of petitioner.  (TT VI, 12, 20, ECF No. 41).  In February 2001, she was selling heroin and using crack cocaine. Petitioner was one of her customers.  (TT VI, 7-9).  She stated that her nickname was "Poochie."  Sometime after David Franklin was shot and killed, petitioner left a bag with Ms. Cross.  (TT VI, 40, 66).  Cross conceded that she had previously testified that the bag contained a gun and something white and rubbery that might have been a mask. (TT VI, 20-21, 26, 59-60).  She testified that she threw the bag away.  (TT VI, 35-36, 57).

Ms. Cross testified that she had been involved in a recorded conversation with petitioner and an unknown third person.  (TT VI, 15, 25).  Portions of that recording were played for petitioner's jury.  (TT VI, 15, 40).  Petitioner asked Ms. Cross about a package.  She responded that it was gone.  (TT VI, 16).

-18-

Petitioner had testified at his initial trial. The testimony that petitioner gave on direct examination by his attorney and cross-examination by the assistant prosecutor was read into evidence without objection.[7] (TT VII, 8-85, ECF No. 42). Petitioner stated that he bought crack from Mr. Franklin. (TT VII, 25, 74). He later went back to see Mr. Franklin because what he had purchased "was short a couple of rocks." (TT VII, 32-33, 74, 84). Petitioner denied having a gun and he denied showing it to Sam Binion. (TT VII, 43). He denied having a mask. (TT VII, 44). He conceded that he was in the area where the shooting occurred and claimed that he "saw a guy run from 435." (TT VII, 47, 76). He denied leaving a bag containing a gun and a mask with Angela Cross. (TT VII, 50-51). Petitioner claimed that the package that he was referring to in the recorded telephone conversation with Ms. Cross was a package of heroin. (TT VII, 54-55). Petitioner denied shooting Mr. Franklin. (TT VII, 56-57). Petitioner claimed that all the witnesses who had identified him as the shooter were mistaken. (TT VII, 61-66).

On January 18, 2007, the attorneys gave their closing arguments and Judge Buth delivered the jury instructions. (TT VII, 94-183, ECF No. 42). After the jury had been instructed and retired to begin their deliberations, there was a brief discussion on the record regarding petitioner's request for a manslaughter instruction. Petitioner's attorney asked Judge Buth to bring the jury back into the courtroom and instruct them on manslaughter. Petitioner's attorney stated: "We brought up briefly

---

[7]This strategic decision allowed petitioner to present his version of events to the jury without the risk of putting him back on the witness stand and subjecting him to further cross-examination based on his earlier testimony.

in chambers, we believe that a jury could find evidence that if there was a killing here, they might find that – and my client responsible, to hold my client responsible under the circumstances under the elements of manslaughter as opposed to second degree, and we'd ask the jury be given to consider that issue." (TT VII, 183).  The prosecution objected on the ground that there was no evidence of mitigating circumstances warranting such an instruction.  Petitioner's theory of the case was that he did not shoot Mr. Franklin. (TT VII, 183-84).  The court denied the request for a manslaughter instruction:  "All right.  And we did discuss this in chambers and I've rejected your request, Mr. Johnson, and the Court's of the opinion that there's absolutely no evidence that would support of justify a verdict as to manslaughter as to Count One.  The Court's of the opinion that it's going to be guilty or not guilty of second-degree murder." (TT VII, 184).

On June 19, 2007, the jury returned its verdict finding petitioner guilty on all charges: second-degree murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony.  (TT VIII, 3-5, ECF No. 43).

On March 28, 2007, Judge Buth conducted a sentencing hearing.  (Sentencing Transcript (ST), ECF No. 44).  At the conclusion of the hearing, the judge expressed his agreement with the jury's verdict.  He found that there was certainly more than sufficient evidence to support the jury's verdict finding petitioner guilty as charged. (ST, 10).  Judge Buth found no reason to deviate from the sentence that he had imposed after petitioner's initial trial.  He once again sentenced petitioner to 35 to 55 years' imprisonment on his second-degree murder conviction, a concurrent sentence of

three to five years' imprisonment on his conviction for carrying a concealed weapon, and a mandatory consecutive sentence two years' imprisonment on the conviction for possession of a firearm during the commission of a felony. (ST, 11; Judgment of Sentence Commitment to Corrections Department, found in Michigan Court of Appeals record, ECF No. 50).

### D.    Subsequent Proceedings

Petitioner sought appellate review. On September 4, 2007, petitioner's appellate counsel filed an amended motion for a new trial and/or *Ginther* hearing. (ECF No. 5-1, PageID.218-24). On December 14, 2007, the trial court denied the motion. (ECF No. 13).

Petitioner's appellate counsel argued that petitioner's convictions should be overturned on the basis of ineffective assistance of trial counsel, error in admitting the recorded telephone conversation into evidence, and prejudicial delay in conducting petitioner's second trial. (Defendant-Appellant's Brief at vi, Statement of Questions Involved, ECF No. 50).

On May 7, 2009, the Michigan Court of Appeals issued its decision affirming petitioner's convictions and sentence. (5/7/09 Op., ECF No. 50). On October 26, 2009, the Michigan Supreme Court denied petitioner's application for leave to appeal. (10/26/09 Order, ECF No. 51).

Petitioner filed a motion for relief from judgment in the trial court. (ECF No. 46). Petitioner argued that the trial court committed error when it denied his *pro se* "Notice of Request Motion." He argued that the court's ruling deprived him of

discovery material under *Brady v. Maryland*, 373 U.S. 83 (1963), deprived him of a right to an independent audio technician, and deprived him of a right to be present during the in-chambers discussion regarding a request for a manslaughter jury instruction.  He argued that his trial counsel had been ineffective.  He argued that the trial court lost jurisdiction to try him when it failed to arraign him after the Michigan Supreme Court remanded the matter for a new trial.  He argued that Judge Buth violated his due process rights by refusing to disqualify himself.  Petitioner argued that his Sixth Amendment rights were violated when the court granted Attorney Woods's motion to withdraw from representing petitioner.  He argued that appellate counsel was ineffective for failure to raise the issues presented in his motion for relief from judgment.  (ECF No. 46).

On December 16, 2010, Judge Buth entered his order denying petitioner's motion for relief from judgment.  (12/16/10 Order, ECF No. 47; ECF No. 5-2, PageID.290-92).  He held that all petitioner's claims of ineffective assistance of trial counsel lacked merit.  Petitioner's arguments were directed at defense counsel's trial strategy and petitioner had not shown that the strategy was unsound.  Judge Buth found that petitioner's arguments related to arraignment, speedy trial, purported discovery and investigation failures, alleged prosecutorial misconduct and judicial bias were barred by procedural defaults, and that petitioner had not shown actual prejudice stemming from any of the claimed errors.  Petitioner's claim that he had been denied his right to be present at every stage of his trial was meritless.  Petitioner had been represented by counsel at all times.  Petitioner's due process rights were not violated

by his attorney's attendance at an in-chambers conference where matters of procedure or law were discussed. (*Id.*). Judge Buth rejected petitioner's claims of ineffective assistance of appellate counsel for lack of merit. "Counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." (*Id.*).

Petitioner filed an application for leave to appeal. On August 9, 2011, the Michigan Court of Appeals denied petitioner's application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (8/9/11 Order, ECF No. 52). On March 5, 2012, the Michigan Supreme Court denied petitioner's application for leave to appeal on the same basis. (3/5/12 Order, ECF No. 53). On June 25, 2012, the Michigan Supreme Court denied petitioner's motion for reconsideration. (ECF No. 5-2, PageID.364).

On October 10, 2012, petitioner filed his petition for federal habeas corpus relief. (ECF No. 1). On November 26, 2012, he filed his amended petition. (ECF No. 5).

## Discussion

## I.    Jurisdiction

Ground I is petitioner's argument that the trial court somehow lost jurisdiction to try him by failure to conduct a new arraignment in violation of petitioner's rights under the Fourteenth Amendment's Due Process Clause. (Amended Petition at 6, 23-24, ECF No. 5, PageID.153, 170-71; Petitioner's Brief at 7-9, ECF No. 2, PageID.25-27). This ground is patently meritless.

It is beyond question that petitioner was aware of the charges against him. (TT I, 6, 14, 19-20, ECF No. 36).  Petitioner's reliance on the Federal Rules of Criminal Procedure (Petitioner's Brief at 7, ECF No. 2, PageID.25) is misplaced because those rules did not apply in state court proceedings.  Purported violations of state law or court rules (*Id.* at 8, PageID.26) do not provide a basis for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a).

Petitioner cites four Supreme Court cases:  *Meachum v. Fano*, 427 U.S. 215 (1976); *Chapman v. California*, 386 U.S. 18 (1967); *Blackledge v. Perry*, 417 U.S. 21 (1974); and *United States v. Griffin*, 303 U.S. 226 (1938).  (Petitioner's Brief at 9, PageID.27).  None of these cases support petitioner's argument.  The Supreme Court has never held that a trial court lacks jurisdiction to conduct a new trial based on a lack of an arraignment after the matter has been remanded for a new trial by an appellate court.  In *Meachum v. Fano*, the Supreme Court held that a state prisoner does not have a constitutionally protected liberty interest in being placed in any particular prison and is not entitled to a hearing regarding his transfer to a prison where the conditions are substantially less favorable.  427 U.S. at 223-24.  In *Chapman v. California*, the Supreme Court addressed the harmless error standard to be applied where California had conceded that there had been federal constitutional violations at trial stemming from the prosecutors' arguments based on the defendants' silence and an inference of guilt stemming from their failure to testify.  386 U.S. at 20, 22.  *United States v. Griffin* was a civil action brought under the Urgent Deficiencies Act in which the Supreme Court addressed a question of statutory construction.  303 U.S. at 226.

In *Blackledge v. Perry*, the Supreme Court addressed a problem of a potential for prosecutorial vindictiveness that was unique to North Carolina's "two tiered appellate process" for misdemeanor convictions.  417 U.S. at 28-29.  If a person convicted of a misdemeanor in district court filed a notice of appeal, under North Carolina law, that individual "had a right to a trial *de novo* in the Superior Court." *Id.* at 22.  The notice of appeal wiped the slate clean, annulled the prior conviction, and the prosecution and defense were required to "begin anew in Superior Court." *Id.*  After Mr. Perry had been convicted of a misdemeanor and filed his notice of appeal, the prosecutor charged him with a felony for the same conduct that had formed the basis for the misdemeanor conviction. *Id.* at 23.  The Supreme Court recognized that North Carolina  prosecutors had means readily at hand to discourage appeals by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursued an appeal.  *Id.* at 27-28.  The Supreme Court held that "it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*." *Id.* at 28-29.

The *Blackledge* case is not even remotely analogous.  In petitioner's case, he faced lesser charges at his second trial, not greater.  Under the remand order by the Michigan Supreme Court granting petitioner a new trial, petitioner faced only the charges of which he had been convicted at his initial trial: second-degree murder, carrying a concealed weapon, and possession of a firearm during the commission of a felony. (TT I, 6, 14, 19, 20, ECF No. 36).  Petitioner no longer faced the charge of open

murder and felony murder, each of which had carried with it a potential for a non-parolable life sentence.  *See Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016); *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004); *Ford v. Curtis*, 277 F.3d 806, 808-09 (6th Cir. 2002).

"Due process of law . . . does not require the state to adopt any particular form of procedure, so long as it appears as the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution." *Garland v. State of Washington*, 232 U.S. 642, 645 (1914).  "[T]he failure to arraign a defendant in open court does not deprive a court of jurisdiction to try the defendant." *Gibson v. Romanowski*, No. 2:12-cv-15650, 2015 WL 1926365, at * 8 (E.D. Mich. Apr. 28, 2015).   Petitioner was initially bound over for trial on the charge of open murder, which includes second-degree murder.   Petitioner subsequently waived arraignment in Kent County Circuit Court. (ECF No. 2-2, PageID.121).  Petitioner was convicted of second-degree murder at his initial trial.  The Michigan Supreme Court remanded the matter for a new trial, not re-arraignment.  (2/3/06 Order, ECF No. 48).  Before jury selection began, petitioner was repeatedly advised that at his new trial he faced the charges of second-degree murder, felony firearm, and carrying a concealed weapon.  (TT I, 6, 14, 19-20, ECF No. 36).  Petitioner had more than adequate notice of the criminal charges that he faced and a more than adequate opportunity to defend himself against those charges.

I find that Ground I does not provide a basis for granting petitioner's request for federal habeas corpus relief.

-26-

## II.   Sixth Amendment Right to Counsel of Choice

Ground II is petitioner's claim that he was deprived of his Sixth Amendment right to counsel of his choice when it granted Attorney Woods's motion to withdraw from the representation because he had a direct conflict of interest stemming from his representation of Ms. Cross.  Petitioner argues that he did not consent to the rationale that Attorney Woods gave for withdrawing from the representation.  He complains that there was no in-depth discussion or inquiry into his attorney's reasons for asking to withdraw from the representation.  (Amended Petition at 7, 24-25, PageID.154, 171-72; Petitioner's Brief at 10-13, ECF No. 2, PageID.28-31).

Petitioner's argument is without merit.  Petitioner was not entitled to counsel of his choice and Attorney Woods had an obvious conflict of interest.  The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  One element of that right is the right to have counsel of one's choice.  *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 148 (2006).  However, the right to counsel of choice is not without limits.  *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).  "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez–Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).  " 'An indigent defendant has no right to have a particular attorney represent him[.]"  *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th

Cir. 1990)).  "[A]n indigent defendant, while entitled to adequate representation,[8] has no right to have the Government pay for his preferred representational choice."  *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) (citing *Caplin & Drysdale*, 491 U.S. at 624).  A defendant has no right to representation by an attorney who has a conflict of interest.[9]  *Luis*, 136 S. Ct. at 1089; *Wheat*, 486 U.S. at 159, 162.

There was no need for any extended discussion of the motion by Attorney Woods for leave to withdraw.  Judge Buth had presided at petitioner's first trial.  He was familiar with Angela Cross's testimony.  (ECF No. 24 at 716-44).  Ms. Cross had given significant testimony favorable to the prosecution at petitioner's initial trial.  She testified that on February 16, 2001, petitioner came to her apartment.  She supplied petitioner with heroin.  Petitioner left behind a brown paper bag that contained a gun and a white, rubbery object.  She testified that she took the bag containing the gun and other object and put it in the dumpster outside her apartment.  (*Id.* at 722-28, 731, 736).  She later had the three-way telephone conference from jail with petitioner and

---

[8]Petitioner received more than adequate representation.  His claims of ineffective assistance of trial and appellate counsel are addressed in section VI of this report and recommendation.

[9]Even in cases involving retained counsel and attempted waiver of the conflict by the defendant, trial courts retain considerable discretion when deciding such motions given the "whipsaw" nature of waiver of conflict-free representation: "If a trial court disqualifies counsel, defendant will argue ... a violation of his Sixth Amendment right to counsel of his choice.  If a trial court refuses to disqualify an attorney, a defendant may later attempt to raise an ineffective assistance of counsel claim based on conflict of interest, asserting that his waiver was not knowingly or voluntarily made."  *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1353-54 (6th Cir. 1993) (citing *Wheat v. Unites States*, 486 U.S. at 161); *see also Kennedy v. Stewart*, 567 F. App'x 433, 434 (6th Cir. 2014).

an unknown individual in which she told petitioner that the package was gone.  (*Id.* at 728-29, 738).  Ms. Cross testified that she was being represented by Attorney Woods. (*Id.* at 740). The decision to grant the attorney's motion to withdraw was not error, much less an error of constitutional dimension.

## III.   Due Process

In Ground III, petitioner argues that his rights under the Fourteenth Amendment's Due Process Clause were violated when the trial court denied his *pro se* motion asking the judge to disqualify himself and assign the matter to another judge. (Amended Petition at 9, 25-26, PageID.156, 172-73; Petitioner's Brief at 14-17, ECF No. 2, PageID.32-35).

"A fair trial in a fair tribunal is a basic requirement of due process.  Fairness of course requires an absence of actual bias in the trial of cases."  *In re Murchison*, 349 U.S. 133, 136 (1955).  Furthermore, a judge can and should be disqualified for "bias, [ ] a likelihood of bias[,] or [even] an appearance of bias."  *See Ungar v. Sarafite*, 376 U.S. 575, 588 (1964); *see also Murchison*, 349 U.S. at 136 ("[O]ur system of law has always endeavored to prevent even the probability of unfairness."); *accord Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988) (opining that due process "require[s] not only an absence of actual bias, but an absence of even the appearance of judicial bias").

Nevertheless, not all appearances of bias are of constitutional significance; indeed, "most matters relating to judicial disqualification d[o] not rise to a constitutional level."  *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702 (1948) (citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)) ("All questions of judicial qualification

may not involve constitutional validity."); *see also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause ... establishes a constitutional floor, not a uniform standard.  Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar.").  "In only two types of cases has the Supreme Court actually held that something less than actual bias violates constitutional due process:  (1) those cases in which the judge 'has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion,' *Tumey*, 273 U.S. at 523 (subsequently expanded to include even indirect pecuniary interest); and (2) certain contempt cases, such as those in which the 'judge becomes personally embroiled with the contemnor,' *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor)."  *Railey v. Webb*, 540 U.S. 393, 400 (6th Cir. 2008).

Petitioner's initial argument is that "[whenever] possible, a criminal case, especially a lengthy one, should be retried before a different judge unless all parties request that the same judge retry the case since the minimization of suspicion of partiality outweighs any consideration of judicial economy or convenience." (Petitioner's Brief, ECF No. 2, PageID.32) (citing *United States v. Bryan*, 393 F.2d 90 (2d Cir. 1968) (per curiam) and *Johnson v. Mississippi*, 403 U.S. 212 (1971) (per curiam).  Neither case cited by petitioner lends support to his claim of entitlement to habeas corpus relief.

The *Bryan* decision was not decided on constitutional grounds.  It was merely a two-page *per curiam* opinion decided by a Second Circuit panel on the basis of that circuit's exercise of its supervisory power over lower courts within that circuit regarding the practice of reassigning cases after remand.  *See United States v. Newman*, 481 F.2d 222, 223 (2d Cir. 1973) (*per curiam*).  In *Johnson v. Mississippi*, the Supreme Court considered a judge's summary conviction of a civil rights worker for criminal contempt without a hearing.  In addition, immediately before making the criminal contempt finding, the judge had been a losing defendant in a civil rights action brought against him in federal court by the same civil rights worker, and the federal court had temporarily enjoined the state court judge from discrimination by reason of race, color, or sex in jury selections.  403 U.S. at 214.  The Supreme Court reversed the finding of criminal contempt and remanded the matter for a hearing before another judge.  The Court found that it was plain that the judge was "so enmeshed involving the petitioner as to make it most appropriate for another judge to sit."  *Id.* at 215-16.

The facts of this case bear no resemblance to *Johnson v. Mississippi*.  The Supreme Court's holding in that case did not clearly establish a constitutional right to have a case assigned to a different judge on remand, where, as here, the State's highest court found an error based on the jury's review of a transcript that had not been reviewed for accuracy by the trial court and the transcript had not been made part of the record.  (2/3/06 Order, ECF No. 48).

Next, petitioner expresses dissatisfaction with various rulings made by Judge Buth. (Petitioner's Brief at 15-17, PageID.33-35). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted); *see also Wilson v. Parker*, 515 F.3d 682, 701 (6th Cir. 2008); *Morrissey v. Napel*, No. 2:13-cv-298, 2016 WL 1156599, at *11-12 (W.D. Mich. Mar. 24, 2016).

Having reviewed the entire record, I find no evidence that Judge Buth was biased against petitioner. Ground III does not provide a basis for habeas corpus relief.

## IV.   Discovery

Ground IV is petitioner's argument that the trial court abused its discretion by denying his *pro se* "Notification of Request" motion and violated his due process rights because he was not present in chambers for the discussion of a possible manslaughter jury instruction. (Amended Petition at 10, 26-27, ECF No. 5, PageID.157, 173-74; Petitioner's Brief at 18-23, ECF No. 2, PageID.36-41).

Petitioner argues that the court's ruling deprived him of "discovery material" under *Brady v. Maryland*, 373 U.S. 83 (1963). (Petitioner's Brief at 19, PageID.37). In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is

material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  The Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  Prejudice and materiality are established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.  The trial court denied the *pro se* motions petitioner had filed as his second trial was about to begin. Petitioner's counsel was prepared and ready to proceed.  There is no evidence of any *Brady* violation.

Under the heading "INDEPENDENT EXPERT WITNESS" petitioner cites a decision from the Western District of Tennessee, which was decided under the Federal Rules of Criminal Procedure, *United States v. Noel*, 708 F. Supp. 177 (W.D. Tenn. 1989).  Petitioner argues that this case somehow established his "right to test and analyze the state[']s tape recording evidence by an independent tape recording expert." (Petitioner's Brief at 21, ECF No. 2, PageID.39).  The Federal Rules of Criminal Procedure do not apply in state court.

-33-

The other case cited by petitioner, *Forensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007), lends no support to petitioner's argument because in that case the Sixth Circuit addressed a trial court's ruling that prevented the defendant's expert on eyewitness identification from testifying. Here, the trial court judge did not make any evidentiary ruling excluding expert testimony. Further, petitioner has never presented evidence that further testing and/or analysis of the recording would have generated any evidence favorable to petitioner.

Finally, petitioner argues that his constitutional rights were violated when the trial court judge had a discussion in chambers with the attorneys regarding the jury instructions. (Petitioner's Brief at 21-23, ECF No. 2, PageID.39-41). A criminal defendant has a constitutional right to be present at all critical stages of the trial. *Rushen v. Spain*, 464 U.S. 114, 117 (1983). He has a right to be present during court proceedings when his presence "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *United States v. Gagnon*, 470 U.S. 522, 526 (1985). The Fourteenth Amendment requires the presence of the defendant only to the extent that a fair and just hearing would be thwarted by his absence. *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1653 (1964). But the Constitution does not require the defendant to be present when his presence would be useless. *Snyder*, 291 U.S. at 106-07. Petitioner did not have any constitutionally guaranteed right to be present in the judge's chambers during the discussion of jury instructions with the attorneys. *See Buell v. Mitchell*, 274 F.3d 337, 363-64 (6th Cir. 2001); *Brinkley v. Houk*, 866 F.

-34-

Supp. 2d 747, 793 (N.D. Ohio 2011); *Thomas v. Hudson*, No. 1:07 cv 1430, 2008 WL 2902063, at *17-18 (N.D. Ohio July 23, 2008); *Woodruff v. Lafler*, No. 05-cv-74623, 2007 WL 522704, at *3-4 (E.D. Mich. Feb. 14, 2007). Further, petitioner was present when his attorney made the formal request on the record for a manslaughter instruction and he was present when Judge Buth denied the request because there was no evidence supporting the instruction.[10] (TT VII, 184).

I find that none of the arguments presented in Ground IV provide a basis for granting federal habeas corpus relief.

**V.      Prosecutorial Misconduct**

Ground V is petitioner's claim of prosecutorial misconduct in offering into evidence a poor quality recording of a conversation between petitioner and Ms. Cross and using his own version of the recording in questions to witnesses and reading it to the jury. Petitioner argues that the trial court abused its discretion in allowing the prosecutor to read his version to the jury. (Amended Petition at 12, ECF No. 5, PageID.159, 174-75; Petitioner's Brief at 24-28, ECF No. 2, PageID.42-46).

---

[10]It was entirely appropriate for the trial court to refuse to give a manslaughter instruction because it was not supported by the evidence. "[D]ue process does not require an instruction on a lesser-included offense if the offense does not support such an instruction." *Bowling v. Parker*, 344 F.3d 487, 500 (6th Cir. 2003) (citing *Hopper v. Evans*, 456 U.S. 605, 611 (1982)). Further, even if the trial court's decision had been incorrect and if petitioner sought relief on that ground, it would not provide a basis for federal habeas corpus relief. The Supreme Court has never held that the Due Process Clause requires lesser-included offense instructions in a non-capital case. *See McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) *(en banc)*; *see also Parker v. Burt*, 595 F. App'x 595, 605 (6th Cir. 2015).

The scope of review in a habeas action of prosecutorial misconduct is narrow. "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).  This Court does "not possess supervisory powers over state court trials."  *Id.*  "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority."  *Id.*  "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.' "  *Id.*  (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  To be grounds for habeas corpus relief, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

The Michigan Court of Appeals rejected all petitioner's claims related to the recorded telephone conversation, including his claims of prosecutorial misconduct, addressing the issues in some length.  *See People v. Lewis*, No. 277505, 2009 WL 1262863, at * 1-3 (Mich. Ct. App. May 7, 2009).  Having carefully reviewed the reasoning of the Michigan Court of Appeals rejecting all petitioner's claims in Ground V, I find that it easily withstands scrutiny under 28 U.S.C. § 2254(d).

## VI.   Assistance of Counsel

### A.   Trial Counsel

Ground VI is petitioner's argument that he was deprived of his Sixth Amendment right to the effective assistance of counsel where counsel conducted no investigation, interviewed no witnesses, subpoenaed no witnesses, failed to lodge necessary objections, failed to communicate with petitioner, failed to communicate with an investigator, and failed to contact the independent expert regarding the tape.

(Amended Petition at 13, 28-29, ECF No. 5, PageID.160, 175-76; Petitioner's Brief at 29-34, ECF No. 2, PageID.47-52).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Michigan Court of Appeals decided petitioner's claims of ineffective assistance of counsel on their merits, its decision on each claim must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decisions were contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

-37-

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decisions applied *Strickland* incorrectly. Rather, petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. 1372, 1375-77 (2015); *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

The Michigan Court of Appeals applied the *Strickland* standard and rejected petitioner's claims for lack of merit.  2009 WL 1262863, at *4.  Petitioner's arguments were "directed at defense counsel's trial strategy, and there [was] no showing that defense counsel's trial strategy was unsound." (*Id.*).  The Court of Appeals noted that "even if a strategy fails, it does not render counsel's assistance ineffective." (*Id.*).  The Court of Appeals held that petitioner "failed to establish that counsel's performance was deficient, failed to overcome the presumption of sound trial strategy, and failed to establish prejudice from the alleged deficiencies." (*Id.*).

I find that petitioner has not shown that the decision of the Michigan Court of Appeals rejecting all his claims of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review.  28 U.S.C. § 2254(d)(1).

B.   Appellate Counsel

In Ground VII, petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of appellate counsel where counsel failed to raise on direct appeal the issues that petitioner later raised in his motion for relief from judgment under Mich. Ct. R. 6.500.  (Amended Petition at 15, 30, ECF No. 5, PageID.162, 177; Petitioner's Brief at 35-38, ECF No. 2, PageID.53-56).

Claims of ineffective assistance of appellate counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington.  See Evitts v. Lucey*, 469 U.S. 387 (1985).

-39-

In the case of appellate counsel, petitioner has no constitutional right to have every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Appellate counsel acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). " 'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. at 751-52). Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

To overcome the presumption of competence of appellate counsel in these circumstances, petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.*; *see Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012) (Petitioner "must show the issues his appellate counsel failed to raise were 'clearly stronger' than the issues his counsel did raise – and that the state court lacked a reasonable basis for believing otherwise.") (citation omitted). Appellate counsel has no duty to raise meritless issues. *Evitts*, 469 U.S. at 394; *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993).

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair,"

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

Judge Buth rejected petitioner's claims of ineffective assistance of appellate counsel for lack of merit. The arguments that petitioner raised in his motion for relief from judgment were meritless. Petitioner suffered no prejudice stemming from his appellate counsel's decision not to raise those weaker arguments on direct appeal. I find that the trial court's decision rejecting all petitioner's claims of ineffective assistance of appellate counsel easily withstands scrutiny under the "doubly deferential" standard of review. *See* 28 U.S.C. § 2254(d)(1).

## VII.  Speedy Trial

Ground VIII is petitioner's argument that the trial court violated his Sixth Amendment right to a speedy trial where it allowed months to pass before bringing him back to Kent County for his second trial. (Amended Petition at 16, 30-31, ECF No. 5, PageID.163, 177-78; Petitioner's Brief at 39-42, ECF No. 2, PageID.57-60).

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. The Sixth Amendment guarantee applies to the States through the Fourteenth Amendment's Due Process Clause. *See Klopfer v. North Carolina*, 386 U.S. 213 (1967). To determine whether a speedy trial violation has

-41-

occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.' " *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker*, 407 U.S., at 522).

The Michigan Court of Appeals considered the four *Barker* factors in evaluating Petitioner's claim. First, the length of the delay from the decision of Michigan Supreme Court remanding the matter for a new trial and the commencement of that trial was approximately 11 months.[11]  2009 WL 1262863, at *4. Second, the reasons for the delay did not weigh in petitioner's favor. The bulk of the delay (180 days) was attributed to docket congestion. Ninety-seven days were attributed to petitioner based on his filing of three motions. The remaining portion of the delay (61 days) was attributed to the prosecution and defendant, where there was a delay in transferring defendant from facilities and where defense counsel withdrew before trial commenced. (*Id.*). Third, petitioner's assertion of his speedy trial right weighed in his favor. He had mentioned his right to a speedy trial an August 14, 2006, motion, and previous

---

[11]The Court of Appeals presumed prejudice because the delay exceeded six months, a presumption compelled by state law, but not the Sixth Amendment. *Cornelius v. Prelesnik*, No. 1:13-cv-992, 2016 WL 5538045, at *7 (W.D. Mich. Sept. 30, 2016).

trial counsel asserted defendant's right to a speedy trial at the October 13, 2006, motion hearing. (*Id.*). Fourth, the Court of Appeals agreed with the trial court's finding that petitioner suffered no prejudice as a result of the delay. (*Id.*). It rejected petitioner's argument that he suffered prejudice because he could not find two witnesses. "[T]here was no evidence that those witnesses were unavailable to testify due to the delay." (*Id.* at *5).

The Michigan Court of appeals rejected petitioner's speedy trial claim and held that petitioner's new trial "commenced within a reasonable time under the circumstances." (*Id.*). This Court must presume the correctness of the state court's findings of fact with regard to petitioner's role in causing the delay and the absence of prejudice, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Petitioner has supplied no contrary evidence. Petitioner has similarly failed to demonstrate how the state court's balancing of the factors "was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). I find that Ground VIII does not provide a basis for federal habeas corpus relief.

## VIII.  Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d

466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  529 U.S. at 484.  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong.  Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated: December 6, 2016                         /s/  Phillip J. Green
                                                United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).